# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 28, 2026
Lyle W. Cayce
Clerk

No. 25-30408

Louisiana Shrimp Association; John Brown; Larry Helmer, Jr.; Penny V. Zar,

*Plaintiffs—Appellants*,

*versus*

Howard Lutnick, *Secretary, U.S. Department of Commerce, In his official capacity*; National Marine Fisheries Service; Donald J. Trump, *President of the United States, In his official capacity*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CV-156

Before Elrod, *Chief Judge,* and Clement and Oldham, *Circuit Judges*.

Jennifer Walker Elrod, *Chief Judge*:[*]

In 2019, the National Marine Fisheries Service issued a rule requiring all skimmer-trawl vessels 40 feet and longer to use turtle-excluder devices, which allow sea turtles to escape from their nets. Plaintiffs—a commercial shrimping organization and three individuals active in the shrimping

[*]This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

industry—challenged the rule under the Administrative Procedure Act. On cross-motions for summary judgment, the district court upheld the 2019 Rule. We AFFIRM the district court's grant of summary judgment to Defendants and denial of summary judgment to Plaintiffs.

I

A

The Endangered Species Act makes it unlawful to "take"—that is, "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect"—endangered and threatened species. 16 U.S.C. §§ 1532(19), 1538(a)(1)(B); *see* 50 C.F.R. § 223.205. The Act exempts from this prohibition certain takings that are "incidental" to lawful activity. *See* 16 U.S.C. § 1536(b)(4), (o)(2). It also gives the Secretary of Commerce authority to promulgate regulations to restrict takings of the relevant species. *Id.* § 1533(d). Federal agencies that take actions covered by the Endangered Species Act must "use the best scientific and commercial data available" to ensure that they are not likely to harm endangered or threatened species. *Id.* § 1536(a)(2).

B

In 1987, the National Marine Fisheries Service (NMFS) promulgated a rule intended to reduce incidental takings of several species of endangered and threatened sea turtles by shrimp trawler vessels. This rule required shrimp trawler vessels 25 feet and longer operating in offshore waters to use turtle-excluder devices (TEDs). Sea Turtle Conservation; Shrimp Trawling Requirements, 52 Fed. Reg. 24244, 24248 (June 29, 1987) (to be codified at 50 C.F.R. pts. 217, 222, 227). The agency had planned to apply the same requirement to all shrimping vessels, regardless of size and whether operating inshore or offshore. *See generally* Sea Turtle Conservation; Shrimp Trawal Requirements, 52 Fed. Reg. 6179 (proposed Mar. 2, 1987) (to be codified at 50 C.F.R. pts. 217, 222, 227). However, recognizing "the limited scientific

data on the incidental mortality of sea turtle[s] and TED effectiveness in certain areas, particularly inshore waters," the 1987 Rule ultimately allowed smaller shrimp trawler vessels in offshore waters and all shrimp trawler vessels in inshore waters to instead comply with "tow-time restrictions"—*i.e.*, limits on how long a vessel can tow its nets without checking for captured turtles. 52 Fed. Reg. at 24246, 24251–52.

Soon after, NMFS expanded its regulations in this area. In 1992, the agency eliminated the inshore–offshore distinction, generally requiring all shrimp trawler vessels to use TEDs year-round. Threatened Fish and Wildlife; Threatened Marine Reptiles; Revisions to Enhance and Facilitate Compliance With Sea Turtle Conservation Requirements Applicable to Shrimp Trawlers; Restrictions Applicable to Shrimp Trawlers and Other Fisheries, 57 Fed. Reg. 57348, 57351–52 (Dec. 4, 1992) (to be codified at 50 C.F.R. pts. 217, 227). However, NMFS still exempted certain types of inshore shrimp trawler vessels from the TED requirement, including skimmer-trawl vessels,[1] allowing them to continue abiding by tow-time restrictions. *Id.* at 57349, 57354. In 2003, NMFS modified its TED requirements to require larger escape-opening sizes.

In 2012, after a significant increase in sea-turtle strandings in the northern Gulf of America[2] and related litigation from environmental groups,

[1] A skimmer-trawl vessel is a type of commercial shrimp trawler vessel commonly used in shallower, inshore waters. It pushes rigid, L-shaped or trapezoid frames with attached nets through the water, "skimming" the surface and mid-depths. *See* Sea Turtle Conservation; Shrimp Trawling Requirements, 81 Fed. Reg. 91097, 91098–99 (proposed Dec. 16, 2016) (to be codified at 50 C.F.R. pt. 223). Almost all skimmer-trawl vessels in the United States operate out of Louisiana; a much smaller number operate out of Mississippi, Alabama, North Carolina, and Florida.

[2] On January 20, 2025, President Trump directed the Secretary of the Interior to rename the United States continental-shelf area formerly known as the Gulf of Mexico the "Gulf of America" and to update the Geographic Names Information System accordingly.

NMFS proposed an even more protective rule that would have eliminated alternative tow-time restrictions and required all skimmer-trawl, pusher-head-trawl, and wing-net vessels to use TEDs. *See generally* Sea Turtle Conservation; Shrimp Trawling Requirements, 77 Fed. Reg. 27411 (proposed May 10, 2012) (to be codified at 50 C.F.R. pt. 223). But NMFS withdrew this proposed rule in 2013, after discovering a flaw in the standard TED design that prevented smaller sea turtles—which are often encountered by shrimp trawler vessels operating in shallower, inshore waters—from escaping, thus defeating the purpose of the device. Sea Turtle Conservation; Shrimp Trawling Requirements, 78 Fed. Reg. 9024, 9025 (Feb. 7, 2013) (to be codified at 50 C.F.R. pt. 223). The withdrawal stated that the agency would "explore technological solutions to address the small turtle issue," with the goal of gathering "sufficient information to evaluate a potential proposed rule that would be effective in reducing sea turtle bycatch in the inshore skimmer trawl fisheries in the near future." *Id.* at 9026. NMFS also announced its intent to consult with experts to produce a report on "criteria to determine mortality in trawl fisheries." *Id.*

From 2013 onward, NMFS tested new TED configurations and convened an expert workshop to develop national criteria for assessing post-interaction mortality for sea turtles captured in gear used by shrimp trawler vessels. Environmental groups again sued in 2015, urging NMFS to enact more restrictive regulations on shrimp trawler vessels.

---

Exec. Order No. 14172, § 4(b), 90 Fed. Reg. 8629, 8630 (Jan. 31, 2025). We use this federal designation, although documents in the administrative record from before 2025 use "Gulf of Mexico."

C

In 2016, NMFS issued another proposed rule, which again proposed to eliminate alternative tow-time restrictions and require all skimmer-trawl, pusher-head-trawl, and wing-net vessels to use TEDs. Sea Turtle Conservation; Shrimp Trawling Requirements, 81 Fed. Reg. 91097, 91098, 91100 (proposed Dec. 16, 2016) (to be codified at 50 C.F.R. pt. 223). The 2016 Proposed Rule concluded that, in light of NMFS's development of new TED configurations, difficulties in enforcing tow-time restrictions, changes in gear used by skimmer-trawl vessels, and changes in sea-turtle population, requiring TEDs for these types of shrimp trawler vessels was necessary and appropriate. *Id.* at 91098.

NMFS received public comments on the 2016 Proposed Rule, which raised performance and safety issues with TED use on smaller vessels, concerns about the economic impacts of the proposed rule, new information about lower levels of sea-turtle mortality in offshore waters, and a lack of data showing the effectiveness of TEDs on pusher-head-trawl and wing-net vessels. Sea Turtle Conservation; Shrimp Trawling Requirements, 84 Fed. Reg. 70048, 70049 (Dec. 20, 2019) (to be codified at 50 C.F.R. pt. 223). NMFS reviewed and incorporated these comments into the final regulation, ultimately deciding to limit the TED requirement to a much smaller subset of shrimp trawler vessels. *Id.*

The final rule, promulgated in 2019, requires all skimmer-trawl vessels 40 feet and longer, whether operating inshore or offshore, to use TEDs. *Id.* at 70048–49. The 2019 Rule took effect on August 1, 2021.

D

Plaintiffs—a commercial shrimping organization and three individuals involved in the Louisiana shrimping industry—sued, asserting that the 2019 Rule violates the Administrative Procedure Act and the

Constitution and requesting declaratory and injunctive relief.[3] Plaintiffs moved for summary judgment, and Defendants cross-moved for summary judgment. The district court granted Defendants' motion and denied Plaintiffs' motion, upholding the 2019 Rule. Plaintiffs appealed as to their APA claim.

## II

We review a district court's grant of summary judgment in an APA case *de novo*. *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 120 F.4th 163, 170 (5th Cir. 2024).

Under the APA, we must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "To decide whether agency action is arbitrary and capricious, we begin by asking whether '[the] agency articulated a rational connection between the facts found and the decision made.'" *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 469 (5th Cir. 2024) (quoting *ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 571 (5th Cir. 2017)). "We then ask if the agency's reasoning 'fails to account for relevant factors or evinces a clear error of judgment.'" *Id.* (quoting *Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 985 F.3d 472, 475 (5th Cir. 2021)). An

---

[3] Two other federal lawsuits have previously challenged the 2019 Rule. First, the State of Louisiana challenged the rule as too restrictive of the shrimping industry. The district court dismissed Louisiana's claims for lack of standing, and we affirmed. *See generally Louisiana ex rel. La. Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin*, 70 F.4th 872 (5th Cir. 2023). After Louisiana's suit was dismissed, Plaintiffs filed this suit. Second, three environmental groups challenged the rule as insufficiently restrictive of the shrimping industry. The district court and the D.C. Circuit both upheld the rule, holding that it "was reasonably explained and was a logical outgrowth of the proposal that preceded it." *Ctr. for Biological Diversity v. Nat'l Marine Fisheries Serv.*, No. 22-5295, 2024 WL 3083338, at *1–2 (D.C. Cir. June 21, 2024).

agency rule is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Although we must give the agency "due deference," that "does not make arbitrary and capricious review 'toothless'; rather, it has 'serious bite.'" *Louisiana*, 90 F.4th at 470 (quoting *Data Mktg. P'ship v. DOL*, 45 F.4th 846, 856 (5th Cir. 2022)).

The agency's "factual findings must be supported by 'substantial evidence.'" *Worldcall Interconnect, Inc. v. Fed. Commc'ns Comm'n*, 907 F.3d 810, 817 (5th Cir. 2018) (quoting 5 U.S.C. § 706(2)(E)). "Substantial evidence involves 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 818 (quoting *Elgin Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 718 F.3d 488, 495 (5th Cir. 2013)). When reviewing the evidence, "we may neither reweigh the evidence in the record nor substitute our judgment for the [agency's]." *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988)). Plaintiffs bear the burden of showing that the evidence before the agency "compels a contrary conclusion." *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996) (citing *Ozdemir v. INS*, 46 F.3d 6, 8 (5th Cir. 1994)).

## III

Plaintiffs challenge the 2019 Rule as arbitrary and capricious agency action, for three reasons: (1) NMFS failed to provide a reasoned explanation and substantial evidence for its alleged reversal of its earlier policy;

(2) NMFS disregarded the Louisiana shrimping industry's reliance interests; and (3) NMFS failed to consider relevant scientific data and public comments. We disagree, concluding that NMFS has "articulated a rational connection between the facts found and the decision made," and its reasoning does not "fail[] to account for relevant factors or evince[] a clear error of judgment." *Louisiana*, 90 F.4th at 469 (first quoting *ExxonMobil*, 867 F.3d at 571; and then quoting *Univ. of Tex. M.D. Anderson Cancer Ctr.*, 985 F.3d at 475).

A

NMFS has articulated several reasons for its decision to require skimmer-trawl vessels 40 feet and longer to use TEDs. Plaintiffs meaningfully engage with two of these reasons on appeal, asserting that NMFS failed to back them with substantial evidence. We disagree, concluding that each is supported by substantial evidence in the administrative record.

First, NMFS asserts that TED development and testing since 2013 have proven the effectiveness of new TED configurations, rendering TED use more workable for skimmer-trawl vessels than in the past. *See* 81 Fed. Reg. at 91098; 84 Fed. Reg. at 70050. The agency backs this assertion with evidence from the Final Environmental Impact Statement (FEIS) associated with the 2019 Rule, including a 2012–2016 study showing that TEDs with three-inch bar spacing (as opposed to the standard four-inch bar spacing maximum) reduce bycatch for skimmer-trawl vessels by 17%. A "reasonable mind" would accept this evidence "as adequate to support" NMFS's conclusion. *Worldcall Interconnect*, 907 F.3d at 818 (quoting *Elgin Nursing*, 718 F.3d at 495).

Second, NMFS asserts that tow-time restrictions have proven an insufficiently effective alternative to TEDs on skimmer-trawl vessels.

81 Fed. Reg. at 91098. In support, the agency cites evidence that skimmer-trawl vessels significantly impact sea turtles even when they comply with tow-time restrictions. *See* 84 Fed. Reg. at 70050, 70054. This evidence, set out in the FEIS, includes federal observer data collected on skimmer-trawl vessels in the Gulf of America from 2012 to 2015 and in North Carolina from 2011 to 2016, estimating dozens to thousands of yearly sea-turtle captures and mortalities. The FEIS also includes reports—the 2016 Stacy Report and 2017 Procedural Directive—concluding that when sea turtles are captured, "persistent or delayed effects can lead to [post-interaction] mortality . . . including deaths of some turtles that appear to be in good health at the time of release."[4] Courts generally must defer to these kinds of findings and predictions, which are "within [NMFS's] area of special expertise, at the frontiers of science." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983).

NMFS also cites sources indicating that tow-time restrictions cannot be relied upon as an effective sea-turtle conservation measure. For instance, two National Oceanic and Atmospheric Administration Technical Memoranda reveal widespread noncompliance with tow-time restrictions by skimmer-trawl vessels: In 2012, only 35% of observed tows complied with the tow-time limit, and in 2014, only 28% of observed tows complied with the

[4] Plaintiffs challenge these reports as relying only on information that predates the 2012 Rule, which exempted skimmer-trawl vessels from using TEDs. It is true that the reports cite predominantly pre-2012 studies, but they also cite some post-2012 studies, and each synthesizes this data with the post-2012 recommendations of federal and non-federal scientific experts. The reports therefore constitute new, independent scholarship that could reasonably form the basis of a changed rule since 2012. Regardless, NMFS's use of these reports to support the 2019 Rule is the "type of technical determination[] to which we accord particular deference." *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 705 (5th Cir. 2010) (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 376–77 (1989)). We decline Plaintiffs insistence that we scrutinize the exact wording and cited sources of each document in the administrative record.

limit. Other studies in the administrative record corroborate this low compliance rate. NMFS also points to law-enforcement data and public comments corroborating this widespread noncompliance. The FEIS emphasizes the difficulty of enforcing tow-time restrictions due to factors like limited manpower, "the time required to monitor a given vessel," and "the limited ability to observe unbiased fishing operations." The FEIS further points to newly aggregated data on sea turtles' post-interaction mortality rates, which indicates that tow-time restrictions "may not be as effective in reducing sea turtle bycatch and mortality as previously thought." 84 Fed. Reg. at 70050.

Plaintiffs' emphasis on NMFS's data showing that sea-turtle populations have increased since 1987, even without requiring skimmer-trawl vessels to use TEDs, is misleading. The FEIS reveals that while sea-turtle populations have indeed grown since NMFS began regulating in this area, they have not increased enough to meet NMFS's objective: recovery, which means delisting these species from the Endangered Species Act. The FEIS states that even the TED requirements in the 2019 Rule are "unlikely to result in the recovery of Kemp's ridley sea turtles" "in the reasonably foreseeable future" but that "benefits are still expected to accrue due to the reduction in mortalities." A "reasonable mind" would accept this evidence "as adequate to support" NMFS's conclusion. *Worldcall Interconnect*, 907 F.3d at 818 (quoting *Elgin Nursing*, 718 F.3d at 495).

As set out above, we "may neither reweigh the evidence in the record nor substitute our judgment for the [agency's]." *Villa*, 895 F.2d at 1022 (quoting *Hollis*, 837 F.2d at 1383). NMFS has provided substantial evidence backing each of its major reasons for issuing the 2019 Rule. We therefore conclude that NMFS has articulated the requisite rational connection between the facts found and the decision made. *See Louisiana*, 90 F.4th at 469.

B

NMFS's reasoning does not fail to account for relevant factors or evince a clear error of judgment. *See id.* For one, the 2019 Rule reasonably weighs the relevant costs and benefits of requiring skimmer-trawl vessels 40 feet and longer to use TEDs. The 2016 Proposed Rule and the 2019 Rule show that NMFS considered seven alternatives for the action—ranging from no action to requiring TED use by all shrimping vessels in all waters. 81 Fed. Reg. at 91102–03; 84 Fed. Reg. at 70062. NMFS compared how these alternatives would affect TED costs, shrimp revenue loss, and the number of shrimping vessels affected. 81 Fed. Reg. at 91102–03; 84 Fed. Reg. at 70062. As to the alternative that it ultimately selected—requiring skimmer-trawl vessels 40 feet and longer to use TEDS—NMFS completed an exhaustive analysis of the relevant costs and benefits in the FEIS.

In addition, NMFS's reasoning does not fail to account for the specific factors that Plaintiffs assert that that reasoning lacks: namely, (1) the Louisiana shrimping industry's alleged reliance interests; (2) Louisiana's scientific data or its formal request for a geographic exemption; and (3) public comments from Mississippi and the Louisiana Shrimp Association. We address each of these points in turn.

1

First, NMFS did not improperly disregard the Louisiana shrimping industry's alleged reliance interests. Plaintiffs contend that "Louisiana shrimpers [have] structured their operations, equipment, and investment decisions around" NMFS's prior "stable regulatory regime," and they maintain that the 2019 Rule improperly disregarded these reasonable reliance interests. We are not persuaded.

As an initial matter, Plaintiffs have not necessarily established the existence of a "legitimate reliance on prior interpretation." *Smiley v.*

*Citibank (S.D.), N.A.*, 517 U.S. 735, 742 (1996) (first citing *United States v. Pa. Indus. Chem. Corp.*, 411 U.S. 655, 670–75 (1973); and then citing *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 295 (1974)). Each of NMFS's proposed and final rules since 1987 has demonstrated the agency's intent to extend the TED requirement to inshore waters and shrimp trawler vessels. *See* 52 Fed. Reg. at 24244; 57 Fed. Reg. at 57348; 77 Fed. Reg. at 27411; 81 Fed. Reg. at 91097; 84 Fed. Reg. at 70048. Moreover, these rules have faced legal challenges for years, further alerting stakeholders of the potential for regulatory change. *See Mozilla Corp. v. FCC*, 940 F.3d 1, 64 (D.C. Cir. 2019) (holding that reliance on an agency's determination was not reasonable in part because the regulation had been subject to "persistent legal challenges"). At the very latest, the Louisiana shrimping industry would have been put on notice of NMFS's potential extension of the TED requirement to skimmer-trawl vessels in 2012, when the agency proposed to eliminate the alternative tow-time restriction and require TEDs for all skimmer-trawl, pusher-head-trawl, and wing-net vessels. *See* 77 Fed. Reg. at 27413. Plaintiffs therefore cannot contend that the 2019 Rule upended reasonable reliance interests allegedly "formed over decades of consistent agency policy." Also, the evidence to which Plaintiffs point to show longstanding reliance interests actually speaks more to *costs* to the industry, not to reliance interests. *See Texas v. United States*, 40 F.4th 205, 228 (5th Cir. 2022) (differentiating between costs and reliance interests).

Even if Plaintiffs have shown actual reliance interests, NMFS has provided the type of reasoned explanation for its change in policy that can overcome even "serious reliance interests." *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 570 (2025) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016)). The administrative record reveals that NMFS considered the 2019 Rule's costs to the shrimping industry at every stage, accounting for how it would affect both individual vessel

operators and larger institutional stakeholders in the region. The agency prepared an initial regulatory flexibility analysis for the 2016 Proposed Rule, which "describes the economic effects [that the] proposed rule, if adopted, would have on small entities." 81 Fed. Reg. at 91100. The 2016 Proposed Rule acknowledged the scientific finding that TEDs result in an estimated 6.21% reduced shrimp harvest per tow and that increased efforts by shrimping vessels (more tows or trips) are likely to be cost-ineffective—meaning that "vessels affected by th[e] proposed rule would be expected to experience adverse economic effects from two sources: reduced shrimp revenue and increased gear costs associated with the purchase, installation, maintenance, and replacement of newly required TEDs." *Id.* The 2016 Proposed Rule also acknowledged that the TED requirement might cause "a high number of the part-time vessels" to cease operations. *Id.* at 91102.

NMFS then held public hearings on the 2016 Proposed Rule. 81 Fed. Reg. at 91103; 84 Fed. Reg. at 70049. It afterward specifically considered, and responded to public comments about, the economic impacts on the shrimping industry, coastal communities, and consumers—citing this as one of its reasons to drastically narrow the scope of the final rule. 84 Fed. Reg. at 70050–53, 70056–57, 70059–60. Ultimately, the revisions that NMFS made between the proposed and final rule "reduced the number of affected fishers by 82 percent, reduced the total economic effect by 73 percent, and are expected to result in a conservation benefit of 801–1,168 sea turtles annually in the Southeastern U.S. shrimp fisheries." 84 Fed. Reg. at 70049. All of this reflects a cognizance by NMFS "that longstanding policies may have 'engendered serious reliance interests that must be taken into account,'" *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 30 (2020) (quoting *Encino Motorcars*, 579 U.S. at 212), and constitutes its obligatory actual consideration of these reliance interests.

Second, NMFS did not improperly fail to consider Louisiana's scientific data or its formal request for a geographic exemption. Plaintiffs complain that the 2019 Rule does not incorporate and consider data from Louisiana's "long-running bycatch study," which allegedly calls into question NMFS's data on sea-turtle interactions with shrimp trawler vessels. They suggest that NMFS should have obtained this data and considered the possibility of designating Louisiana as an exclusion zone prior to issuing the final rule. We are again unpersuaded.

"Where . . . the parties challenge [an agency's] adequate consideration of alternatives, they 'must structure their participation to alert the agency to their position in order "to allow the agency to give the issue meaningful consideration . . . ."'" *Shrimpers & Fishermen of RGV v. U.S. Army Corps of Eng'rs*, 56 F.4th 992, 997 (5th Cir. 2023) (quoting *Gulf Coast Rod, Reel & Gun Club, Inc. v. U.S. Army Corps of Eng'rs*, 676 F. App'x 245, 251 (5th Cir. 2017)). Here, NMFS provided ample opportunity for public comment on the 2019 Rule. Louisiana did not take that opportunity to submit this data, despite how crucial Plaintiffs assert that it is. Louisiana merely sent a letter to NMFS in May 2021—two whole years after the 2019 Rule's publication—expressing these concerns for the first time.

NMFS's failure to obtain Louisiana's data does not render the 2019 Rule arbitrary and capricious. It is true that, under the Endangered Species Act, agencies must use the "best scientific and commercial data available" in formulating regulations. 16 U.S.C. § 1536(a)(2). But Plaintiffs have not shown that Louisiana's data was any better than the data on which NMFS based its decision-making. Moreover, this is the "type of technical determination[] to which we accord particular deference." *Medina Cnty. Env't Action Ass'n*, 602 F.3d at 705 (citing *Marsh*, 490 U.S. at 376–77). And regardless, Louisiana's data is outside our scope of review because we are not "permitted to consider evidence outside the administrative record." *See*

*Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 327 n.8 (5th Cir. 1988) (first citing *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973); and then citing *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 904–05 (5th Cir. 1983)).

In addition, NMFS's failure to consider Louisiana's request for a geographic exemption is not fatal to the rule. Louisiana presented this request to NMFS for the first time in its May 2021 letter, so Plaintiffs cannot credibly argue that NMFS should have considered it when formulating the 2019 Rule.

3

Third, NMFS did not improperly fail to consider public comments from Mississippi and the Louisiana Shrimp Association. Plaintiffs assert that NMFS failed to consider Mississippi's comment in opposition to the 2019 Rule, which argued that the "timing of increased strandings does not match spatial distribution of shrimping effort." They also contend that NMFS failed to engage with the Louisiana Shrimp Association's comment challenging the agency's quantitative sea-turtle mortality criteria as arbitrary. We disagree.

Agencies must "consider all relevant factors raised by the public comments and provide a response to significant points within." *Chamber of Com. of U.S. v. SEC*, 85 F.4th 760, 774 (5th Cir. 2023) (citing *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 449 (5th Cir. 2021)). "Comments the agency must respond to include those that 'can be thought to challenge a fundamental premise underlying the proposed agency decision' or include points that 'if true and adopted would require a change in an agency's proposed rule.'" *Id.* (first quoting *Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 344 (D.C. Cir. 2019); and then quoting *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 971 (5th Cir. 2023)).

NMFS need not have considered Mississippi's comment more fulsomely than it did. Mississippi's comment was based on a two-page resolution by the Mississippi Commission on Marine Resources, referencing a single statistic for which it cited no sources. And this cited statistic—a low number of sea-turtle strandings in Mississippi in 2012—does not necessarily contradict the evidence on which NMFS based the 2019 Rule, given that "strandings typically represent only a small fraction of actual mortality." Thus, even to the extent this comment could be considered "significant," it would not necessarily have required a change in the proposed rule, such that NMFS needed to respond to it more fulsomely than it did. *See Huawei Techs. USA*, 2 F.4th at 449.

NMFS did engage with the substance of the Louisiana Shrimp Association's comment. The 2019 Rule responds to comments challenging NMFS's conclusion that tow-time restrictions were insufficient to avoid sea-turtle mortality by explaining its data on post-interaction mortality, citing the 2016 Stacy Report, the FEIS, and the 2017 Procedural Directive. 84 Fed. Reg. at 70050, 70054–55. In turn, the Stacy Report explains the scientific basis on which the agency developed its sea-turtle mortality criteria and the input that the agency received from experts when developing them. The FEIS then details how the agency used these mortality criteria to assign mortality rates to different categories of turtles and estimate annual mortalities. NMFS therefore did not fail to consider this aspect of the issue.

C

Ultimately, Plaintiffs' arguments about reliance interests and NMFS's alleged failures to consider specific evidence appear to "simply reflect a disagreement with the way the agency balanced the[ relevant] costs and benefits." This is insufficient to meet their burden under the APA. *See Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 234 (5th Cir. 2006)

(holding that "simply assert[ing] disagreement with the [agency's] conclusion" does "not me[e]t [plaintiffs'] burden to show that [the agency] acted arbitrarily or capriciously"). We therefore conclude that NMFS's reasoning does not fail to account for relevant factors or evince a clear error of judgment such that we should set aside the 2019 Rule. *See Louisiana*, 90 F.4th at 469.

## IV

In sum, NMFS has reasonably explained its decision and backed it with substantial evidence, and its reasoning accounts for all relevant factors. Plaintiffs therefore have not met their burden of showing that NMFS's action was arbitrary and capricious such that we should set it aside under the APA. We therefore AFFIRM the district court's grant of summary judgment to Defendants and denial of summary judgment to Plaintiffs.